# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **MICHAEL A. MASON** | CASE NO.  PWG 20 CV 1908 |
| **Plaintiff,** | |
| V. | |
| **DOMINOS PIZZA** | |
| **Defendant,** | **JURY TRIAL DEMANDED** |

FILED _____ ENTERED
LODGED _____ RECEIVED

JUN 2 3 2020

AT GREENBELT
CLERK U.S. DISTRICT COURT
DISTRICT OF MARYLAND
NIGHT DEPOSIT BOX

## COMPLAINT

**COMES NOW**, Plaintiff Pro Se, Michael A. Mason,(hereinafter "Plaintiff"), and files this Complaint against Defendant Dominos Pizza(hereinafter "Defendant") and alleges and states as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action for violations of Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1866(Section 1981), the ADA(et seq), and the ADAAA(et seq).

2. This action seeks damages for Defendant's illegal discrimination, harassment, disparate treatment, and retaliation against Plaintiff in violation of the aforementioned statutes.

3. This action seeks damages against Defendant for it's failure to provide Plaintiff with a "reasonable accommodation" under the provisions of the ADA(et seq) and the ADAAA(et seq), it's failure to engage in the "interactive process" in response to Plaintiff's requests, verbal and via text, for a "reasonable accommodation", and it's acts of retaliation to include terminating Plaintiff's employment on June 27, 2016.

## PARTIES

4. Plaintiff, Michael A. Mason, is an adult male citizen and resident of the State of Maryland and resides at 5452 85th Avenue, #203, New Carrollton, MD 20784.

5. Defendant, Dominos Pizza, is a corporation with it's principal of business located in Ann Arbor, Michigan. Defendant operates a franchise which employed Plaintiff at 3515 Forte Meade Road, Laurel, MD 20724.

6. Defendant at all times employed 15 or more people full-time and engaged in commerce within the meaning of Title VII(et seq), the ADA(et seq), the ADAAA(et seq), and Section 1981.

## JURISDICTION AND VENUE

7. This Court has jurisdiction over this action pursuant to 28 U.S.C. section 1331.

8. The unlawful employment practices alleged in this Complaint were committed within the State of Maryland. Venue is proper pursuant to 28 U.S.C. section 1391 and 42 U.S.C. 2000e-5(f).

## ADMINISTRATIVE PROCEDURES

9. Within 300 days of the alleged illegal actions of Defendant, Plaintiff timely filed a charge of harassment, discrimination, and retaliation with the Baltimore, MD office of the Equal Employment Opportunity Commission.("EEOC")

10. Plaintiff received his notification of his Dismissal and Notice of Right-to-Sue from the Philadelphia, PA office of the EEOC.

11. Plaintiff filed this Complaint within 90 days of the receipt of said notice.

## STATEMENT OF THE FACTS

12. Plaintiff was hired as a driver by Defendant on October 10, 2015.

13. Plaintiff worked primarily out of the store located at 3515 Forte Mead Road, Laurel, MD 20724.

14. Plaintiff was born with and suffers from Bipolar Disorder, a DSM-5 mental disability under both the ADA(et seq) and the ADAAA(et seq).

15. Plaintiff's disability causes him to suffer periodic episodes of mania followed by episodes of depression.

16. Interacting with others is a major life activity under the ADA(et seq) and the ADAAA(et seq) for mental disabilities which includes Bipolar Disorder.

17. Plaintiff suffers from Hypertension, which is also recognized as a disability under both the ADA(et seq) and the ADAAA(et seq).

18. While employed by Defendant Plaintiff was taunted, ridiculed, harassed, and discriminated against based on his disability and race by management and some of his coworkers on a regular basis between October 10, 2015 and his termination on June 27, 2016.

19. On February 3, 2016 Plaintiff was forced to seek emergency medical treatment due to his disabilities at the Greater Laurel Hospital located in Maryland.

20. In February 2016 Plaintiff showed the General Manager(GM) CJ Cameron, the District Manager(DM) Megan Murphy, and the Human Resources(HR) Specialist Catrice Mc Neely his medical documentation relating to his Bipolar Disorder and Hypertension.

21. In February 2016 Plaintiff began to make requests for a "reasonable accommodation" due to his disabilities.

22. By law Plaintiff's requests were not required to be made in writing.

23. Between February 2016 and June 27, 2016 Plaintiff made repeated requests for a "reasonable accommodation" verbally and via text messages to the management and HR representatives of Defendant.

24. Some of the dates requests were made via text messaging included the dates of March 17, 2016 at 8:52p.m., May 31, 2016 at 5:37a.m., and on June 15, 2016 at 9:03a.m.

25. On March 14, 2016 Plaintiff made a verbal request for a "reasonable accommodation" and complained about coworker harassment to the GM CJ Cameron. Plaintiff was sent home for the day without being paid.

26. In April 2016 Plaintiff made a verbal complaint about coworker harassment by Barry Johnson, Henry Tayo Caternor, and John Hoffman to the assistant manager Hali Usman. Plaintiff was sent home for the day without being paid.

27. Defendant refused to meet with Plaintiff about his requests for a "reasonable accommodation" or engage in the "interactive process" as far as Plaintiff's disabilities were concerned.

28. On Tuesday, March 15, 2016 Plaintiff filed a complaint with the Baltimore, MD office of the EEOC about his harassment and Defendant's failure to make a "reasonable accommodation" with regards to Plaintiff's disabilities.

29. On Wednesday, March 16, 2016 Plaintiff notified several of his coworkers and the manager on duty about his EEOC complaint.

30. Later that night, Cesar Valdez Maroquin, a Hispanic driver, posted a note by the time clock about a white driver named John Hoffman.

31. The note accused John Hoffman of harassing and threatening employees and said he should leave or quit.

32. Later that night John Hoffman approached Plaintiff making physical threats and harassed Plaintiff.

33. Plaintiff called the DM Megan Murphy to complain about his conduct towards Plaintiff.

34. Plaintiff believed his conduct violated the Defendant's Company policy handbook.

35. On March 22, 2016 Plaintiff received a write up accusing Plaintiff of making false accusations against coworkers.

36. Several coworkers told Plaintiff they were victims of harassing conduct by John Hoffman. They included the assistant managers Brandon Hall, Dwayne Williams, and Hali Usman, Candice Escobar, and Cesar Valdez Maroquin.

37. They told Plaintiff they verbally complained to both the GM CJ Cameron and the DM Megan Murphy on several occasions.

38. John Hoffman told Plaintiff he did not like Africans.

39. On April 22, 2016 at around 9p.m. a customer who worked as a policeman while he was living in Africa called in to complain about the conduct of John Hoffman after he performed a delivery that evening.

40. The customer told Plaintiff he perceived by his conduct he was being racist. Plaintiff gave the call to the assistant manager on duty, Hali Usman.

41. An African driver quit the next day after John Hoffman threatened and harassed him in the parking lot for parking too close to his vehicle.

42. Plaintiff had just arrived at work and was sitting in his car and heard and witnessed the incident.

43. At no point or time was John Hoffman ever written up, sent home without pay, suspended, or terminated by Defendant for his actions or conduct.

44. John Hoffman is white, was a driver similarly situated with Plaintiff, performing the same duties and reporting to the same supervisors and managers as did Plaintiff while employed by Defendant.

45. Plaintiff daily experienced feelings of sadness, anxiety, and depression due to the harassment by Defendant's managers and some of Plaintiff's coworkers exacerbating the symptoms of Plaintiff's Bipolar Disorder.

46. On May 6, 2016 the assistant manager named Brandon Hall called Plaintiff and asked him to work on his day off.

47. Later that day the GM CJ Cameron arrived at the store. There was no one on duty, Plaintiff was clocked out and off duty but answered the phone and worked the oven as a result of no one being in the store at the time.

48. The very next day the GM CJ Cameron gave Plaintiff a write up for not wearing his hat while on duty in violation of company policy.

49. Between October 10, 2015 and June 27, 2016 Plaintiff observed John Hoffman and several other drivers work without wearing their hats, and using car tops without receiving write ups.

50. On June 23, 2016 Plaintiff engaged in protected activity by placing a complaint about his being harassed, being written up, being sent home without pay, and being suspended thru the Defendant's People First HR online system.

51. Between February 2016 and June 27, 2016 Plaintiff made several complaints about his harassment, discrimination, and being reltaliated against to the Defendant's HR personnel which included Catrice McNeely and Aubrey Minton.

52. On June 27, 2016 Plaintiff visited the Baltimore, MD office of the EEOC and met with investigator Ms. Christie Boyd to amend his original complaint to include Retaliation based on the write ups, and suspension by Defendant.

53. While meeting with Ms. Boyd Plaintiff contacted Defendant's Payroll specialist and HR manager Aubrey Minton within the presence of Ms. Boyd.(During the conversations Plaintiff placed them on speaker phone)

54. Plaintiff was terminated via a text message in July 2016 by Defendant.

55. The text said the effective date of Plaintiff's termination was Monday, June 27, 2016, the same day Plaintiff visited the EEOC to amend his complaint to include Retaliation.

56. At all times relevant while employed by Defendant, Plaintiff was qualified to perform the essential functions of his position as a driver with or without accommodations.

57. At all times while employed by Defendant Plaintiff performed his job duties satisfactorily.

## **COUNT I ADA, ADAAA DISCRIMINATION**

58. Plaintiff hereby incorporates by reference each of the foregoing allegations as if stated fully herein:

59. Plaintiff, at all times while employed by Defendant, performed his job satisfactorily.

60. Plaintiff has exhausted his administrative remedies.

61. Plaintiff suffers from Bipolar Disorder and Hypertension.

62. Both Bipolar Disorder and Hypertension are recognized as disabilities under both the ADA(et seq) and the ADAAA(et seq).

63. Between February 2016 and June 27, 2016 Plaintiff made several requests for a "reasonable accommodation" due to his disabilities, verbally and via text messaging.

64. By law, Plaintiff's requests were not required to be made in writing.

65. Plaintiff's requests were denied.

66. Defendant failed to engage in the "interactive process" in response to the requests made by Plaintiff for a "reasonable accommodation" as mandated by both the ADA(et seq) and the ADAAA(et seq).

67. Wherefore, Plaintiff seeks economic, compensatory and punitive damages jointly and severally, plus interest, cost, attorney fees, and such other and further equitable relief this Court deems appropriate.

## **COUNT II RETALIATION/DISPARATE TREATMENT**

68. Plaintiff hereby incorporates by reference each of the foregoing allegations as if stated fully herein:

69. Plaintiff, at all times while employed by Defendant, performed his job duties satisfactorily.

70. Plaintiff has exhausted his administrative remedies.

71. Plaintiff is black or African-American as far as his race.

72. Plaintiff complained to Defendant on several occasions about discrimination, harassment, disparate treatment, and made several requests for a "reasonable accommodation" due to his disabilities.

73. Said actions were protected activity under Title VII, the Civil Rights Act of 18866(Section 1981), the ADA(et seq), and the ADAAA(et seq).

74. Plaintiff suffered Retaliation and adverse employment actions on the part of Defendant in the form of write ups, being sent home without pay, suspension, and termination of his employment on June 27, 2016.

75. A causal link exists between the protected activity and the adverse employment actions.

76. Wherefore, Plaintiff seeks economic, compensatory and punitive damages jointly and severally, plus interest, cost, attorney fees and such other and further equitable relief this Court deems appropriate.

## **PRAYER FOR RELIEF**

**Wherefore**, Plaintiff respectfully requests that this Court enter judgment in favor of Plaintiff for all matters raised in this Complaint, and grants an order of judgment as follows:

a) Punitive damages based on Defendant's willful, malicious, intentional, and deliberate acts including ratification, condemnation and approval of said acts

b) General damages for mental and emotional suffering caused by Defendant's misconduct

c) Trial by jury to all issues

d) Injunctive relief, back pay, and front pay in lieu of reinstatement

e) Any and all other relief this Court deems appropriate

## **DEMAND FOR A TRIAL BY JURY**

Pursuant to F.R.C.P. 38 and the Seventh amendment of the U.S. Constitution Plaintiff requests a trial by jury on all issues raised in this Complaint.

x. *Michael A. Mason*

(Michael A. Mason)

5452 85th Avenue, #203

New Carrollton, MD 20784

Email: Mmasonzx10r@aol.com

Phone No. (240)484-4357