**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

MICHAEL A. MASON,                              *

    Plaintiff,                                *

v.                                             *          Case No.: DLB-20-1908

DOMINO'S PIZZA, LLC,                           *

    Defendant.                                *

\*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*       \*

**MEMORANDUM OPINION**

As a self-represented litigant, Michael Mason filed suit against his former employer

Domino's Pizza, LLC ("Domino's") alleging unlawful discrimination, harassment, and retaliation

in violation of federal employment laws.  ECF 1.  He alleges he was harassed and discriminated

against based on his disabilities (bipolar disorder and hypertension) and race (Black).  *Id.* ¶¶ 13,

14, 18, 71.  He claims Domino's terminated his employment on June 27, 2016 after he requested

accommodations and complained about the perceived harassment and discrimination.  *Id.* ¶¶ 21–

26, 28–29, 33, 50, 54.

Domino's moved to dismiss Mr. Mason's complaint or compel arbitration and stay the

proceedings.  ECF 7.  Mr. Mason, through counsel, opposed the motion, ECF 12, and Domino's

filed a reply, ECF 15.[1]  A hearing is not necessary.  *See* Loc. R. 105.6.  The Court finds that Mr.

Mason and Domino's entered into a valid arbitration agreement and the agreement covers the

claims Mr. Mason asserts here.  Accordingly, Domino's motion, which the Court treats as a motion

---

[1] The parties' submissions were filed pursuant to the Court's Order requiring a party to file a letter
requesting leave to file a motion, ECF 2.  The Court treated Domino's letter request as a motion,
plaintiff's letter in response as an opposition, and Domino's response as a reply.  ECF 10.

for summary judgment, is granted, and the case is dismissed.  Plaintiff may pursue his claims against Domino's through arbitration.

In its motion to dismiss or compel arbitration and stay the proceedings, Domino's argues the parties entered into a valid arbitration agreement that covers the scope of Mr. Mason's claims. In response, Mr. Mason disputes that he ever entered into the arbitration agreement.  Both parties have submitted evidence in support of their respective positions.  When considering a motion to dismiss or compel arbitration supported by evidence, courts often treat the motion as one for summary judgment, especially where, as here, the "the formation or validity of the arbitration agreement is in dispute."  *Farmer v. Macy's, Inc.*, No. TDC-17-0567, 2019 WL 5079763, at *2 (D. Md. Oct. 10, 2019); *see Noe v. City Nat'l Bank of W. Virginia*, 828 F. App'x 163, 166 (4th Cir. 2020) (unpublished) (noting that the court may consider evidence on a motion to compel arbitration, as it would on summary judgment); *Caire v. Conifer Value Based Care, LLC*, 982 F. Supp. 2d 582, 589 (D. Md. 2013).  To resolve the merits of the motion, the Court may consider documents outside the pleadings as necessary.  *Noe*, 828 F. App'x at 166; *Farmer*, 2019 WL 5079763, at *2 (quoting *Shaffer v. ACS Gov't Servs.*, 321 F. Supp. 2d 682, 683–84 (D. Md. 2004)). The Court will consider the evidence submitted by the parties and treat the pending motion as one for summary judgment.

## I.      Factual Background

It is undisputed that Domino's hired Mr. Mason as a delivery driver for its Laurel, Maryland location in December 2015.  ECF 12-1, ¶ 1 (Mason Aff.); ECF 15-2, ¶ 4 (Chodzko Aff.); ECF 15-5 (application).  It is also undisputed that Mr. Mason completed online forms as part of the onboarding process for his position with Domino's.  ECF 12-1, ¶ 2; ECF 15-2, ¶ 4.

Domino's offers documentary and testimonial evidence to support the following facts.

Before beginning employment, new Domino's hires were required to sign an arbitration

agreement, among other documents.  ECF 15-2, ¶ 5.  The arbitration agreement provided:

> [B]oth the Company and Employee agree that any claim, dispute, and/or controversy that the Employee or the Company may have against the other shall be submitted to and determined exclusively by binding arbitration under the Federal Arbitration Act, 9 U.S.C. Sections 1-16.  This specifically includes any claim . . . Employee may have against the Company, which would otherwise require or allow access to any court or other governmental dispute resolution forum arising from, related to, or having any relationship or connection whatsoever with Employee's seeking employment with, employment by, termination of employment, or other association with the Company, whether in contract, in tort, pursuant to statute, regulation, or ordinance, or in equity or otherwise (including, but not limited to, any claims related to wages, reimbursements, discrimination, and harassment, whether based on state law, Title VII of the Civil Rights Act of 1964, as amended, as well as all other federal, state or local laws or regulations).  It also specifically includes any claim, dispute, and/or controversy relating to the scope, validity, or enforceability of this Arbitration Agreement.

ECF 15-4.

New hires followed a multi-step, online process to sign the arbitration agreement and other

onboarding documents.  ECF 15-2, ¶¶ 6–13.  First, they needed to sign into the Domino's Team

Member Service Center ("TMSC") Website using "their individual personal username and a

unique password of their choosing."  *Id.* ¶ 6.  The welcome screen on the website provided links

to the arbitration agreement and the other forms new hires needed to sign.  *Id.* ¶¶ 8–10; ECF 15-3

(screenshot).  When a new hire clicked the link to the arbitration agreement, the employee would

see instructions on how to review the arbitration agreement, a cover letter from the Vice President

of Compensation, Benefits and Shared Services explaining Domino's mandatory arbitration

program, a flyer about arbitration, and the arbitration agreement itself.  ECF 15-2, ¶¶ 11–12.  The

cover letter stated that employees were required to sign the arbitration agreement to begin or

continue employment.  ECF 15-4; ECF 15-2, ¶ 15.  After an employee reviewed the arbitration

agreement, a message would inform them that a signature was required, and they would have to

click "accept" and type their name and the last four digits of their Social Security number to e-sign the agreement.   ECF 15-2, ¶ 13; ECF 15-3.   Domino's checked the personal identifying information against its human resources data to confirm the person signing the document was in fact the new employee.  ECF 15-2, ¶ 14.  If an employee did not sign the agreement, they would not be able to clock into work.  *Id.* ¶ 16.

Like all new hires, Mr. Mason followed the multi-step online process for reviewing and signing documents before beginning work for Domino's.  ECF 15-2, ¶ 7.  On December 17, 2015, he digitally signed an "E-Signature Consent Form."   ECF 15-6.  By signing this form, he agreed that his "electronic signature is the equivalent of [his] handwritten (or wet) signature, with all the same legal and binding effect."  *Id.*  Among the documents Mr. Mason agreed to electronically review and e-sign were "arbitration agreements."  *Id.*; *see also* ECF 15-2, ¶¶ 17–19; ECF 15-5. On December 24, 2015, he digitally signed the 2015 Policy Manual at 6:51 PM, and at 6:57 PM, he signed the 2015 Team Member Handbook, which includes a paragraph on Domino's arbitration program.  ECF 15-9, at 2, 7; ECF 15-10, at 7–8; ECF 15-2, ¶¶ 27–28.  At 6:59 PM, he digitally signed the arbitration agreement.  ECF 15-7; ECF 15-2, ¶¶ 20, 23–24.  As part of his review of the arbitration agreement, he also reviewed the cover letter and flyer explaining Domino's mandatory arbitration program.  ECF 15-2, ¶¶ 11–12.

Like Domino's, Mr. Mason offers documentary and testimonial evidence to support his position.  *See* ECF 12-1 (Mason Aff.); ECF 12-2 (2015 Policy Manual e-signature page); ECF 12-3 (2015 Policy Manual cover page).  He states he did not agree to arbitration, did not sign a document labeled "Arbitration Agreement," and while he signed other documents as part of the onboarding process, none of those documents, including the 2015 Policy Manual, mentioned

arbitration. ECF 12-1, ¶ 2.[2] He insists Domino's never provided him with a cover letter explaining the arbitration program, a flyer about arbitration, or the arbitration agreement. *Id.* ¶ 5.

## II.      Standard of Review

Summary judgment is appropriate when the moving party establishes that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  To meet its burden, the party must identify "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . admissions, interrogatory answers, or other materials" in support of its position.  Fed. R. Civ. P. 56(c)(1)(A).  Then, "[t]o avoid summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial."  *Perkins v. Int'l Paper Co.*, 936 F.3d 196, 205 (4th Cir. 2019) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  A dispute of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.  The opposing party must identify more than a "scintilla of evidence" in support of its position to defeat the motion for summary judgment.  *Id.* at 251.  The Court "should not weigh the evidence."  *Perkins*, 936 F.3d at 205 (quoting *Anderson*, 477 U.S. at 249).  However, if "a party fails to establish the existence of an element essential to that party's case" or "'the record taken as a whole could not lead a rational trier of fact to find for the non-moving party,'" then summary judgment is proper.  *Id.* (quoting *Teamsters Joint Council No. 83 v. Centra, Inc.*, 947 F.2d 115, 119 (4th Cir. 1991)); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  In ruling on a motion for summary judgment, this Court "view[s] the facts and inferences drawn from the facts in the light most

---

[2] Mr. Mason submitted only the cover sheet for the 128-page 2015 Policy Manual and offered to submit the entire manual to the Court for review.  That is unnecessary.  The Court credits his undisputed representation that the manual does not refer to arbitration.

favorable to . . . the nonmoving party." *Perkins*, 936 F.3d at 205 (quoting *Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 958 (4th Cir. 1996)).

## III.    Discussion

Domino's seeks judicial enforcement of the arbitration agreement pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1–16 ("FAA").   The FAA compels courts to enforce written arbitration agreements when a party seeks such relief.  9 U.S.C. § 3.  The Act "reflects 'a liberal federal policy favoring arbitration agreements.'"  *Adkins v. Lab. Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)).

> To compel arbitration, a party must show
>
> (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*Adkins*, 303 F.3d at 500–01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)). If the party makes this showing, then the Court "shall . . . stay the trial of the action" pending arbitration.  9 U.S.C. § 3.  Despite the statute's language requiring a stay of the action, "dismissal is a proper remedy when all of the issues presented in a lawsuit are arbitrable."  *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709–10 (4th Cir. 2001).

The crux of the parties' dispute is whether Mr. Mason agreed to and is bound by the arbitration agreement.[3]   Certainly there must be an agreement between the parties to arbitrate before arbitration can be compelled.  *Adkins*, 303 F.3d at 501; *Arrants v. Buck*, 130 F.3d 636, 640

---

[3] Mr. Mason does not challenge the existence of a dispute between the parties, the scope of the arbitration agreement, the relationship of plaintiff's employment to interstate commerce, or his refusal to arbitrate the dispute.  *See Adkins*, 303 F.3d at 500–01.

(4th Cir. 1997); *see also* 9 U.S.C. § 3.  To resolve this dispute, the Court applies Maryland contract law.[4]  *See First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995); *Adkins*, 303 F.3d at 501.  "Under Maryland law, '[t]he formation of a contract requires mutual assent (offer and acceptance), an agreement definite in its terms, and sufficient consideration.'"  *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 777 (4th Cir. 2013) (quoting *CTI/DC, Inc. v. Selective Ins. Co.*, 392 F.3d 114, 123 (4th Cir. 2004)).

Mr. Mason claims there was no mutual assent to be bound by the arbitration agreement. He swears in his affidavit that none of the documents he reviewed online during the onboarding process referred to arbitration.  ECF 12-1, ¶ 2.  He claims the page where he affixed his electronic signature did not "have the words Arbitration Agreement on the top of the page," as shown in Domino's supporting exhibit.  ECF 12-1, ¶ 3 (citing ECF 7-1, at 6).  He also claims that the 2015 Policy Manual, which he acknowledges e-signing, does not refer to arbitration.  ECF 12-1, ¶ 4; ECF 12-2, 12-3.

Domino's offers considerable evidence that Mr. Mason digitally signed, agreed to, and is bound by the arbitration agreement after having the opportunity to review it.  Domino's filed an affidavit explaining its onboarding procedures for all new hires, including Mr. Mason, and describing the forms on its website, the use of e-signatures, and the process for reviewing and signing the arbitration agreement.  ECF 15-2, ¶¶ 6–13.  Domino's has shown that employees first must consent to use a digital signature for the onboarding documents, then must select a password for the website, and then must use their name and last four digits of their Social Security number to e-sign documents.  *Id.* ¶¶ 6, 13, 17–18.  This information was verified by human resources.  *Id.* ¶ 13.  Domino's explained that new employees were instructed to review the arbitration agreement.

---

[4] It is undisputed that Maryland law applies.  ECF 12-1, at 3; ECF 15, at 3 n.2, 3 n.4.

*Id.* ¶ 11.  Before they could access the signature page for the agreement, employees viewed a cover letter that stated they had to sign the arbitration agreement to continue employment, a flyer about arbitration, and the arbitration agreement itself.  *Id.* ¶ 12.  The employees then clicked an "accept" button to enter the data necessary to sign the agreement.  *Id.* ¶ 13.  Domino's also filed screenshots of the buttons that employees had to click to sign the arbitration agreement.  ECF 15-3.

Domino's also submitted evidence that Mr. Mason in particular followed the new-hire procedures and digitally signed the arbitration agreement. On December 17, 2015, he digitally signed an "E-Signature Consent Form," and by doing so, he agreed to review the documents he was signing, including "arbitration agreements," and that his electronic signature would bind him just as a handwritten signature.  ECF 15-6.  On December 24, 2015, he digitally signed the 2015 Team Member Handbook, which includes a paragraph on "Domino's Arbitration Program."  ECF 15-9, at 7 (e-signature page) & 15-10 (handbook excerpt).  Shortly after signing the Team Member Handbook, Mr. Mason digitally signed the arbitration agreement.  ECF 15-7 (e-signature page).

Mr. Mason argues Domino's has not properly authenticated his e-signature on the arbitration agreement.  The Court is not persuaded.

Under Federal Rules of Evidence 901, a party may authenticate electronically stored information such as e-signatures by "produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it is," such as "[t]estimony that an item is what it is claimed to be" or "[e]vidence describing a process or system and showing that it produces an accurate result." Fed. R. Evid. 901(a), (b)(1), (9); *see Lorraine v. Markel Am. Ins. Co.*, 241 F.R.D. 534, 542 (D. Md. 2007) (noting "[a] party seeking to admit an exhibit need only make a prima facie showing that it is what he or she claims it to be," which "is not a particularly high barrier to overcome"). Domino's has met the requirements of Rule 901.  It submitted an affidavit of Michael Chodzko, a

Specialist in Domino's Corporate Operations Support in its Human Resources Department who has personal knowledge of "Domino's routine business practices pertaining to the maintenance and security of Domino's computer system and employee access to the TMSC website, a self-service Website maintained by Domino's for internal use." ECF 15-2, ¶ 2. Mr. Chodzko details the online onboarding process required for Mr. Mason and all new Domino's employees, including the e-signature process. Mr. Chodzko describes how all new employees must review and sign the arbitration agreement. *Id.* ¶¶ 5, 7–15. He explains that Domino's maintains electronic records of the e-signatures of its employees and did so in Mr. Mason's case. He attaches to his affidavit several documents reflecting Mr. Mason's e-signatures, including his digital signature of the Arbitration Agreement, which he swears were maintained by Domino's in the usual course of business. *Id.* ¶¶ 17, 20, 21.[5]

After considering the affidavits and the documents submitted by Mr. Mason and Domino's, the Court finds there is no genuine dispute of material fact that Mr. Mason reviewed, signed, and agreed to bound by the arbitration agreement. Although he claims in his affidavit he never signed the agreement and never read a document referring to the agreement during his online onboarding process, Domino's has submitted overwhelming evidence to the contrary. The record evidence shows that Mr. Mason agreed to review online onboarding documents, such as arbitration

---

[5] Domino's also has satisfied the requirements of the Maryland statute adopting the Uniform Electronic Transactions Act. That statute provides, in relevant part, that "[a]n . . . electronic signature is attributable to a person if it was the act of the person," and whether it was "[t]he act of the person may be shown in any manner, including a showing of the efficacy of any security procedure applied to determine the person to which the . . . electronic signature was attributable." Md. Code Ann., Com. Law § 21-108(a). Therefore, "requiring a new hire to enter that employee's own social security number, month and date of birth, and zip code satisfies the security requirement of the Uniform Electronic Transactions Act and thus establishes that the electronic signature on [an] Acknowledgment Form . . . is attributable to [the employee]." *Farmer*, 2019 WL 5079763, at *5 (discussing Com. Law § 21-108(a)).

agreements, and to e-sign and be bound by them as if he were signing them by hand.   His

authenticated digital signature is on the arbitration agreement.   As part of his review of the

arbitration agreement, he reviewed the cover letter and flyer explaining Domino's mandatory

arbitration program.  Even if Mr. Mason is correct that the 2015 Policy Manual, which he agrees

he reviewed and e-signed, does not refer to arbitration, the 2015 Team Member Handbook that he

also e-signed does.  No rational trier of fact could believe Mr. Mason did not sign and agree to the

terms of the arbitration agreement. [6]

This case is factually similar to *Farmer v. Macy's, Inc.*  In that case, the defendant employer

seeking to compel arbitration provided onboarding documents, including documents about

arbitration and how to opt out, along with an affidavit that the store used the documents when it

hired the plaintiff, and the plaintiff provided "only her own declaration."  2019 WL 5079763, at

*4.   The Court rejected plaintiff employee's "account . . . of the processing of the new hire

paperwork and the content of that paperwork" because it was "'blatantly contradicted' by the

record."  *Id.*; *see also Grant-Fletcher v. Collecto, Inc.*, No. RDB-13-3505, 2014 WL 1877410, at

*6–7 (D. Md. May 9, 2014) (rejecting plaintiff's argument that she did not have the opportunity to

review the arbitration agreement embedded in her phone contract and the signature on it was not

---

[6] Domino's argues the arbitrator, not the Court, should determine the enforceability of the
agreement because the parties agreed that the arbitrator would resolve such gateway issues. ECF
7, at 3.  The arbitration agreement states that it "specifically includes any claim, dispute, and/or
controversy relating to the scope, validity, or enforceability of this Arbitration Agreement." ECF
15-4.  It is true that "[w]hen the parties' contract delegates the arbitrability question to an arbitrator,
the courts must respect the parties' decision as embodied in the contract." *Henry Schein, Inc. v.
Archer & White Sales*, 139 S. Ct. 524, 528 (2019) (citing *Rent-A-Ctr., W., Inc. v. Jackson*, 561
U.S. 63, 69–71 (2010)).  But "[i]f a party challenges the validity . . . of the precise agreement to
arbitrate at issue, the federal court must consider the challenge before ordering compliance with
that agreement . . . ." *Rent-A-Ctr., W*, 561 U.S. at 71.  Accordingly, the Court determines whether
the arbitration agreement is valid before compelling arbitration.  *See id.*

hers, because "in order to use the phone service . . . , she would have had to acknowledge acceptance of [the agreement] by one means or another").

This case is unlike *Mansour v. Kmart Corporation*, No. PWG-17-2440, 2018 WL 3575062 (D. Md. July 25, 2018), and *Whitten v. Apria Healthcare Group, Inc.*, No. PWG-14-3193, 2015 WL 2227928 (D. Md. May 11, 2015), where this Court denied the employers' motions to compel arbitration and ordered limited discovery to determine whether the employees accepted the arbitration agreements. In *Mansour*, the Court questioned whether the plaintiff understood and accepted the agreement because the online form was unsigned and the plaintiff's English was limited. In *Whitten*, also, the online form was unsigned and not dated. Further, in *Whitten*, it was not clear that the plaintiff understood that failure to opt out within 30 days after the employer presented the agreement as part of mandatory training would result in acceptance. Here, Domino's already established how its onboarding process operates and identified the safeguards in place to ensure signatures are authentic. Moreover, the online form includes both Mr. Mason's e-signature and a date and time stamp, and Mr. Mason does not claim any difficulty understanding the forms. Further, Mr. Mason could not accept the agreement by failing to act, and the cover letter that preceded the arbitration agreement explained how to opt out.

Mr. Mason's final argument is that it would be unconscionable to enforce an agreement by which he did not agree to be bound. But the record shows he did agree. The defense of unconscionability may invalidate an arbitration agreement if the agreement is "characterized by extreme unfairness, which is made evident by (1) one party's lack of meaningful choice, and (2) contractual terms that unreasonably favor the other party." *Stinger v. Fort Lincoln Cemetery, LLC*, No. TDC-20-1052, 2021 WL 1102512, at *8 (D. Md. Mar. 23, 2021) (quoting *Walther v. Sovereign Bank*, 872 A.2d 735, 743 (Md. 2005)). Mr. Mason has not argued or shown that he did not have a

11

"meaningful choice" or that the agreement's terms "unreasonably favor[ed]" Domino's.  *See id.*

As discussed, the evidence shows Mr. Mason had the opportunity to review the arbitration

agreement before signing it.  Further, he was informed that he could "send [an] opt out email" if

he did not want to "be required to arbitrate all disputes."  ECF 15-3, at 2; *see* ECF 15-4 (noting

employee had "30 calendar days from the date [they] sign the Arbitration Agreement to opt out of

the duty to arbitrate through the procedures described in the Agreement").   Therefore, the

agreement is not unconscionable.  *See Stinger*, 2021 WL 1102521, at \*8; *Walther*, 872 A.2d at

743.

## IV.    Conclusion

The arbitration agreement is a valid, enforceable agreement that covers all of Mr. Mason's

claims in this litigation.  Accordingly, Mr. Mason's claims must be arbitrated, and "dismissal is

the proper remedy."  *Choice Hotels*, 252 F.3d at 709–10.  The Court will compel arbitration and

dismiss the complaint.  Domino's' motion to dismiss the complaint or to compel arbitration and

stay the proceedings, ECF 7, is granted.  A separate Order will issue.


Date: __October 15, 2021__                          _____

                                                    Deborah L. Boardman
                                                    United States District Judge